IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JAIRUS COLLINS**                                                                  **PETITIONER**

**V.**                                         **CIVIL ACTION NO. 2:18CV2:19 TBM-LGI**

**PELICIA G. HALL,**
**Mississippi Department of**
**Corrections**                                                                     **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Jairus Collins seeks federal habeas relief under 28 U.S.C. § 2254.  After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

### Factual and Procedural Background

In 2016, Collins was retried for the murder of Ebony Jenkins in the Circuit Court of Forest County, Mississippi.[1]  He was convicted and sentenced as a habitual offender to life without parole in the custody of the Mississippi Department of Corrections (MDOC).

---

[1] Collins was initially indicted, as a habitual offender, on November 14, 2012, and charged with two counts: murder and possession of a weapon by a convicted felon.  The two charges were severed, and Collins was subsequently convicted on both counts. Both convictions were later affirmed by the Mississippi Court of Appeals. *Collins v. State*, 172 So. 3d 813, 818 (Miss. Ct. App. 2014), *rev'd,* 172 So. 3d 724 (Miss. 2015); *Collins v. State*, 232 So. 3d 739 (Miss. Ct. App. 2017). However, in August 2015, the Mississippi Supreme Court reversed Collins's murder conviction and remanded for a new trial. Collins was reconvicted in 2016 and has filed the instant petition challenging same. Collins also filed a petition for habeas relief under 28 U.S.C. § 2254 challenging his felon-in-possession conviction, which was subsequently denied. *Collins v. Comm'r, Miss. Dept. Of Corr.,* No. 2:18-CV-46-TBM-RPM, 2021 WL 4330974 (S.D. Miss. Aug. 3, 2021), *report and recommendation adopted sub nom. Collins v. Commissioner, Comm'r, Miss. Dept. Of Corr.*, No. 2:18-CV-46-TBM-RPM, 2021 WL 4316952 (S.D. Miss. Sept. 22, 2021).

As in his initial trial, Collins was convicted in part on the testimony of his sister, brother, and father, who were all impeached to varying degrees with their testimony from the prior trial. The relevant facts are accurately described in the state courts' opinion(s), portions of which are repeated verbatim here.

    At trial, the State called Louis Dixon, Jenkins's father, as a witness. Dixon testified that he drove to Hattiesburg and filed a missing person's report after receiving a telephone call that his daughter failed to report to work. On the same day that Dixon filed the report, the Hattiesburg Police Department received a phone call about a homeless person sleeping behind a daycare. When police officers arrived at the scene, they discovered the person was actually Jenkins, who had died as a result of two gunshot wounds.

    The jury also heard testimony from Craig Mitchell, who lived in a house behind the daycare. Mitchell testified that he was smoking a cigarette on his porch when he heard three gunshots. Mitchell testified that the gunshots sounded very close, and he immediately ran inside his house and peered out the window. According to Mitchell's testimony, he saw a man running away from the area towards an apartment complex. Mitchell testified that the man was of medium build, approximately 5'8" tall, and wore a "hoodie-sweater-type" that was "[e]ither blue or grey." The State showed Mitchell a gray sweater belonging to Collins that police officers discovered in the woods. As later testimony revealed, police officers found the sweater wrapped around the suspected murder weapon in a bag hidden in the woods. Upon seeing the gray sweater, Mitchell testified that it was similar to the sweater he saw the man wearing that night.

The State also called Jessie Miles, a friend of Jenkins. Miles testified that he bought a .40 caliber HiPoint pistol but began experiencing problems with the gun. According to Miles, Collins's brother, Joshia, told Miles that Collins could fix the gun. Miles testified that he gave the gun to Collins approximately three weeks before the victim's death after Collins confirmed that he could repair the gun. During Miles's testimony, the State showed him an exhibit, which Miles identified as the gun he bought and gave to Collins to repair. Although the gun's serial number was no longer visible at the time of trial because it had been partially scratched off, Miles testified that the serial number had been clearly visible when he gave the gun to Collins. He also testified that tape had been added to the gun's handle and that Collins never returned the gun.

Collins's father, Melvin, also provided trial testimony about the time period surrounding Jenkins's murder. Melvin testified that his sons stopped by his house, but unlike the first trial, he stated that he could not recall the precise date. Joshia was driving their mom's Dodge Caravan which he had borrowed, and Collins was in the passenger seat. Melvin testified that he picked up a bag inside the van. Though he initially asserted that he could not recall, when presented with his prior testimony, Melvin acknowledged that he had previously testified that he thought the bag felt "weighty." Melvin did not know what the bag contained, but he testified that his "parental instinct kicked in" and he told his sons not to do "anything stupid" and "whatever this is, you need to get away from the house." After Melvin instructed his sons to take the bag and its contents away from his house, Collins and Joshia left.

The jury also heard testimony in the State's case-in-chief from Collins's brother, Joshia, who was treated as a hostile witness with the court's permission. Joshia stated that both he and Collins had been friends with the victim. Joshia acknowledged that he lived at an apartment complex near where the victim's body was found. He also acknowledged that his brother called him from their sister's phone on December 7th and "sounded distraught." Though Joshia asserted that his statement was written under "false pretense," he told police that his brother was wearing a grey hoodie when he arrived. Joshia also testified that he and his brother stopped by their father's house a day or two later. Joshia also claimed that he did not hear his father say to get rid of the bag, but he acknowledged that they drove along Highway 59 after leaving their father's house, stopped, and his brother got out of the vehicle "probably" to dispose of the bag. Joshia maintained, however, that he neither looked inside the bag nor saw his brother with a weapon at any point in time. He also claimed to not know the gun even existed or that Miles had a gun.

The State called two detectives as witnesses, one of whom testified that Joshia led them and another officer to the location where Collins hid the bag in the woods. The detective further testified that the bag contained a gray hoodie wrapped around a gun. Although the gun's serial number was partially scratched off, a crime scene investigator examined the gun and determined it was the gun registered to Miles. After performing additional tests, a forensic scientist concluded that the gun fired the shell casing that police found near Jenkins's body.

In addition to finding the shell casing at the crime scene, officers discovered Jenkins's cell phone and car keys on her body. Jenkins's phone records revealed that the last call she received came from a phone that Collins's sister normally used. Collins's sister testified that she allowed Collins to use the phone around the time of Jenkins's murder. Based on the phone records they obtained, officers determined that Collins and Jenkins exchanged several phone calls and text messages the night of December 7, 2011, before they ended at 10:54 PM.

After hearing the evidence and testimony presented at trial, the jury found Collins guilty of Jenkins's murder. Finding Collins to be a habitual offender pursuant to Miss. Code. Ann. § 99-19-83, the circuit court judge sentenced Collins to life in prison in the custody of the Mississippi Department of Corrections, with no possibility of parole or early release.

Aggrieved and represented by counsel, Collins appealed and raised the following issues:

1. Defendant's conviction is a violation of due process; the State failed to meet its burden of proof and Defendant's conviction is against the great weight of the evidence.

2. The State failed to prove the corpus delicti and did not prove the criminal agency causing death.

3. Defendant's retrial on the charge of murder is barred by the double jeopardy clause.

4. Appellant's sentence as a habitual offender under [Miss. Code Ann.] § 99-19-83 is unconstitutional.

The Mississippi Court of Appeals affirmed the conviction and sentence on November 7, 2018. *Collins v. State*, 2016 WL 10515862 (Miss. Ct. App. May 12, 2016). Subsequent petitions for rehearing and certiorari were denied. Collins, through counsel, filed a motion for post-conviction relief in which he raised the following issues:

1. Appellant's conviction is a violation of due process; the State failed to meet its burden of proof and Defendant's conviction is against the great weight of the evidence.

2. Petitioner was denied due process by the State's failure to prove the corpus delicti.

3. Petitioner's retrial on the charge of murder is barred by the double jeopardy clause.

4. Petitioner's sentence as a habitual offender under [Miss. Code Ann.] § 99-19-83 is unconstitutional.

The Mississippi Supreme Court found the issues were without merit and denied the motion.

Collins, through counsel, now brings the instant petition for federal habeas relief and raises the same grounds that were considered and rejected on appellate and post-conviction review. Having reviewed the record and all the applicable law, the undersigned submits that Collins is not entitled to relief and the instant petition should be dismissed with prejudice.

## Discussion

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2244(d), precludes this Court from granting Petitioner federal habeas corpus relief on claims adjudicated on the merits unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted). Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

## Ground One

In ground one, Collins argues that he is entitled to habeas relief because the State failed to meet its burden of proof and the verdict was against the weight of the evidence. Though not argued with the same level of detail, Collins makes the same supporting arguments he made on direct appeal and state post-conviction review. Collins claims that the phone records in evidence show that his only contact with the victim were multiple messages on December 7, 2011, ending at 10:54 P.M. However, he claims that there was no evidence that he possessed the murder weapon on December 7, 2011, and that there was contradictory evidence from the medical examiner concerning the victim's date of death. He asserts that neither the medical examiner's report nor his testimony established that the victim's wounds were caused by a .40 caliber bullet. He also notes that the weapon had no identifiable fingerprints, despite the fact that the handle on the gun was

8

wrapped with tape which, according to the forensic scientist for the defense, would have enhanced the likelihood of discoverable fingerprints. In addition, Collins argues that the man seen running from the crime scene had a significantly different height and build than he did. The witness described a man 5'8'' tall with a medium build, while Collins asserts that he is 5'5" tall with a slight build. Lastly, Collins intimates that his brother, who has denied any involvement in the crime, was the real culprit. He notes that his brother, Joshia, led law enforcement to the murder weapon and was the one who had the primary discussion with their father about disposing of the bag, contrary to Joshia's testimony. All of these arguments were made at trial.

The law is clear, however. Unlike a sufficiency-of-the-evidence claim, a weight-of-the-evidence claim requires an assessment of the credibility of the evidence presented at trial. *Tibbs v. Fla.*, 457 U.S. 31, 37–38, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982). "The credibility of the witnesses and the weight of the evidence is the exclusive province of the jury." *Hebert v. Rogers*, 890 F.3d 213, 225 (5th Cir. 2018) (citation omitted). It is purely a matter of state law and is not cognizable on habeas review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . ."). Because Collins's challenge to the weight of the evidence is not a valid claim for habeas corpus review, his request for relief on this basis should be denied.

A sufficiency-of-the-evidence claim, however, is based upon federal due process principles, requiring the State to prove each element of the offense beyond a reasonable doubt. The only relevant question in assessing the sufficiency of the evidence is

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Jackson* requires us to look to state law for the substantive elements of the offense, but "the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 182 L. Ed. 2d 978 (2012) (internal quotation marks omitted). *Jackson* claims also "face a high bar in federal proceedings because they are subject to two layers of judicial deference." *Id.* at 651. In the first layer, a state appeals court reviewing the sufficiency of the evidence sets aside the jury's verdict "only if no rational trier of fact could have agreed with the jury." *Id.* In the second layer, a federal court grants habeas relief only upon a finding that the state court's rejection of a sufficiency of the evidence claim was "objectively unreasonable." *Id.* Under *Jackson's* sufficiency-of-the-evidence standard, juries have broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that they "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Viewing the evidence in the light most favorable to the State in this case, the Mississippi Court of Appeals concluded that the jury heard sufficient evidence from which it could rationally infer that Collins committed the crime alleged beyond a reasonable doubt. As the court explained:

> Collins was convicted of deliberate-design murder under Mississippi Code Annotated section 97–3–19(1)(a) (Rev. 2014), which states:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
> > (a) When done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder[.]

The State established that Collins knew Jenkins through the testimony of Collins's brother, Joshia Collins. Joshia testified that he introduced Collins and Jenkins. The State also established that Collins knew Jenkins through the testimony of her friend, Jessie Miles.

Jessie testified that he gave his .40–caliber HiPoint pistol to Collins to repair approximately three weeks prior to Jenkins's murder. Jessie further stated that Collins never returned the gun to him. Jessie presented the receipt for the purchase of the pistol to the police shortly after Collins was arrested for Jenkins's murder. The receipt contained the pistol's serial number.

Jeff Byrd, a crime-scene investigator with the Hattiesburg Police Department, testified that a .40–caliber shell casing was found under some leaves close to where Jenkins's body was found. Further, Byrd stated that although the serial number had been partially scratched off of the pistol, he was able to retrieve its serial number. As a result, Jessie was identified as the owner of the pistol used to shoot Jenkins.

Further, the State established that Collins and Jenkins exchanged several phone calls and text messages prior to Jenkins's death. Kalina Collins, Collins's sister, testified that Collins used her phone frequently, and that Collins possessed her phone prior to Jenkins's death. The State also presented evidence from the cell-phone records that Collins was in close proximity to Jenkins prior to her death.

A .40–caliber pistol was found in the woods wrapped in a gray hoodie. Joshia led the police to the location of the gun, after being in that same location with Collins after the murder. Craig Mitchell testified that he heard gunshots and saw a person wearing either a blue or gray hoodie sweater running toward apartments close to where Jenkins's body was found.

> Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Collins of Jenkins's murder.

*Collins*, 2016 WL 10515862, at *2.

Under our limited AEDPA review, the state court's rejection of Collins's sufficiency-of-the-evidence claim was neither contrary to, nor an unreasonable application of, *Jackson*. On the contrary, the jury's construction of the evidence was reasonable, and its resulting decision to find Collins guilty of deliberate-design murder beyond a reasonable doubt under Mississippi law was rational. The jury was presented with sufficient evidence from which it could reasonably infer that Collins was still in possession of the gun on December 7, 2011; that he used that gun (after scratching off the serial number and wrapping the handle in tape) to kill the victim on or around that date; that he was the individual seen running from the crime scene; and, that he disposed of the gun after wiping his fingerprints in attempt to hide evidence of the crime. Collins's claim that the State presented contradictory evidence concerning the victim's date of death is belied by the record. Consistent with the indictment, the medical examiner testified that the date of death was between December 7, 2011 (when cell phone records reflect that she last communicated with Collins) and December 9, 2011 (when her body was discovered).[2]

---

[2] Count I of the indictment provides that Collins "in Forrest County, Mississippi, between on or about December 7, 2011, and December 9, 2011, did willfully, feloniously and without authority of law kill and murder Ebony Jenkins[.]"

To the extent Collins argues that circumstantial evidence alone cannot satisfy the standard set forth in *Jackson,* the argument is unavailing. The "court looks to both direct and circumstantial evidence in resolving the question of sufficiency of the evidence underlying the conviction." *See, e.g., Taylor v. Scott*, 48 F.3d 529 (5th Cir. 1995) ("[A] sufficiency-of-the-evidence claim may be resolved based on circumstantial evidence."); *Williams v. Scott*, 39 F.3d 320 (5th Cir. 1994) ("[T]he evidence may be sufficient even though entirely circumstantial."); *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990); *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979). Further, "it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Layne*, 43 F.3d 127, 130 (5th Cir. 1995) (internal marks omitted). The evidence in this case, though circumstantial, was sufficient to support the jury's verdict, and Collins has presented nothing in his habeas petition to overcome the deference afforded the state court's decision. *Knight v. Banks*, No. 20-60226, 2021 WL 4301264, at *2 (5th Cir. May 19, 2021) ("Moreover, when a state prisoner presents an insufficiency-of-the-evidence claim in federal habeas, the court must apply this standard of review through the doubly deferential lens of the relitigation bar found in 28 U.S.C. § 2254(d)(1)."). No relief is warranted on this claim.

## Ground Two

In ground two, Collins asserts that there was insufficient evidence to establish that a crime was actually committed. In what is known as the rule of corpus delicti, which means "body or substance of the crime," *Cruz v. State*, 305 So. 3d 149, 162 (Miss. Ct.

13

App.), *reh'g denied* (July 28, 2020), *cert. denied,* 304 So. 3d 1121 (Miss. 2020) (quoting *Cotton v. State*, 675 So. 2d 308, 313 (Miss. 1996)), Mississippi law requires proof beyond a reasonable doubt of two elements to show that a crime has actually been committed: "(1) the existence of a certain act or result forming the basis of a criminal charge and (2) the existence of criminal agency as the cause of this act or result." *Cotton*, 675 So. 308, 313. In a homicide case, the State must specifically prove the "(1) death of a human being and (2) a criminal agency causing that death." *Collins*, 2016 WL 10515862, at *3 (quoting *Hodge v. State*, 823 So. 2d 1162, 1165 (Miss. 2002).

A state's corpus delicti rule, however, does not implicate federal constitutional concerns. *Lemons v. Cain*, 339 F. App'x 494 (5th Cir. 2009); *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998); *see also West v. Johnson*, 92 F.3d 1385, 1393–94 (5th Cir. 1996) (finding "no authority for the proposition that application of that rule is constitutionally mandated"); *Autry v. Estelle*, 706 F.2d 1394, 1407 (5th Cir. 1983) (stating that "[s]uch a state rule of 'corpus delicti' has no independent constitutional footing"). *See also Weaver v. Chappell*, No. 102CV05583AWISAB, 2021 WL 4264070 (E.D. Cal. Sept. 20, 2021) (collecting cases from other jurisdictions). Only *Jackson's* sufficiency-of-the-evidence standard need be satisfied in challenges to state convictions under 28 U.S.C. § 2254. *West*, 92 F.3d at 1394.

That said, in disposing of Collins's corpus delicti claim here, the Mississippi Court of Appeals noted that there was "undoubtedly the death of a human being," and the chief medical examiner's testimony concerning the bullets' trajectory and the victim's gunshot wounds sufficiently established criminal agency causing her death. *Collins*, 2016 WL

14

10515862, at *4 (quoting *Hodge*, 823 So. 2d at 1165–66 ("evidence of trajectory and path of a bullet causes us to conclude that the evidence and reasonable inferences which the jury was justified in drawing from the testimony sufficiently establishes criminal agency"). The medical examiner specifically testified that the victim sustained two entry wounds to the back which exited "through the body cavities, produc[ing] injury to the organs and massive hemorrhage." Nothing of record establishes that the victim's wounds were caused by a lawful act, and as Collins concedes, the medical examiner ruled out the trace amounts of alcohol and marijuana found in her system as the cause of death. Notwithstanding, Collins argues the that the medical examiner gave no testimony regarding the consistency between the victim's wounds and the murder weapon. However, the forensic scientist testified that the shell casing found near the victim's body was fired from the murder weapon. Though Collins maintains that there was no evidence that he fired the weapon, the "suspect's identity is not a component of the corpus delicti." *Parks v. State*, 884 So. 2d 738 (Miss. 2004).

In sum, Collin's corpus delicti argument fails to raise issues of constitutional dimensions. "[I]t is not the providence of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Even if Collin's claim was cognizable, it fails on the merits. The evidence was sufficient to establish that a crime had been committed and that Collins committed that crime utilizing the gun that he obtained from Jessie Miles.

## Ground Three

In ground three, Collins contends that a future "retrial on the charge of murder is barred by the Double Jeopardy clause." It is well settled that the Double Jeopardy Clause bars retrial on the same charge when a conviction is reversed for insufficient evidence. *Tibbs*, 457 U.S. 31 ("A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant."); *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (Double Jeopardy clause bars retrial on same charge when conviction reversed for insufficient evidence). However, this claim is too speculative and premature to support a collateral attack on his conviction.

To be clear, Collins concedes that his retrial following the Mississippi Supreme Court's reversal and remand in *Collins*, 172 So. 3d 724 on evidentiary grounds, was not a violation of the Double Jeopardy Clause. Rather, Collins posits that the insufficiency of the evidence should shield him from any *future* retrial. Such an argument appears to be made in anticipation of a finding in post-conviction that the evidence was insufficient to support his reconviction. *Donahue v. Cain*, 231 F.3d 1000 (5th Cir. 2000) (affirming grant of habeas corpus based on insufficiency of the evidence and directing district court on remand to enter order of nullification). No such finding has been made, however. The Mississippi Court of Appeals found the evidence, as set forth herein, was sufficient to support Collins's reconviction. Collins has presented nothing in his habeas petition to overcome the deference afforded the state court's decision.

16

**Ground Four**

Collins's murder conviction carries with it a maximum term of life imprisonment under Mississippi law. *See* Miss. Code Ann. § §97-3-19 & 97-3-21.  Because Collins was also indicted and convicted as a habitual offender, however, he was subject to a sentence higher than that prescribed—life imprisonment ***without*** parole.  For his fourth and final claim, Collins makes two arguments challenging the constitutionality of the enhancement.  First, Collins asserts that his sentence is contrary to the United States Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which held that "mandatory life without parole for those under age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"  Second, he requests that this Court find Mississippi's habitual offender statute unconstitutional because it allows for the enhancement of sentences without a jury determination contrary to the United States Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).  Both arguments, as noted on direct appeal, are entirely without merit.

As to the first, the record reflects that Collins was 26 years old when he committed the underlying crime, and over 18 years old at the time of his prior crimes in 2006 and 2008.  Thus, *Miller* is inapplicable.

As to the second, Collins misapprehends the rule announced in *Apprendi* and reiterated in *Blakely*.  The Supreme Court merely held that except for prior convictions, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum

must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490 (enhancement based on sentencing judge's finding that defendant committed crime with purpose of intimidating individuals because of their race violated due process); *Blakely*, 542 U.S. at 301 (enhancement based on sentencing judge's finding that defendant acted with deliberate cruelty violated defendant's Sixth Amendment right to the jury determination of same). The Court did not preclude judicial determinations for sentence enhancements based on prior convictions. Collins does not now, nor has he ever, asserted that his prior convictions—all of which occurred after he turned 18—do not satisfy Mississippi's habitual offender statute.[3] *See* Miss. Code. Ann. § 99-19-83.[4] Accordingly, the trial court's use of Petitioner's prior convictions to enhance his sentence was neither contrary to, nor an unreasonable application of, clearly established federal law. Rather, it was entirely consistent with the United States Supreme Court's holdings in *Apprendi* and *Blakely*, as expressly held on direct appeal. *Collins*, 2016 WL 10515862, at *5 ("[T]he circuit court judge based the determination that Collins was a

---

[3] Collins's prior convictions include 2006 convictions for armed robbery and burglary of a dwelling in the Circuit Court of Leflore, County Mississippi, as well as a 2008 conviction for felony lewd or lascivious battery in the Circuit Court of Orange County, Florida.

[4] Miss. Code. Ann. § 99-19-83 provides as follows:

> "Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment[.]"

habitual offender on the evidence of Collins's three prior convictions. The judge did not make any additional findings of fact. Therefore, we find that Collins's sentence as a habitual offender under section 99–19–83 does not violate the United States Supreme Court's holdings in *Apprendi* and *Blakely*." *Collins*, 2016 WL 10515862, at *5 (citing *Baker v. State*, 394 So. 2d 1376, 1379 (Miss. 1981) (observing that § 99-19-83 "is constitutional as written)). No relief is warranted on this claim.

For these reasons, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on December 9, 2021.

                                                        <u>s/ LaKeysha Greer Isaac</u>
                                                        UNITED STATES MAGISTRATE JUDGE